UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HUMANE SOCIETY-WESTERN REGION, d/b/a HAPPYPAWS FARM, a Washington non-profit corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SNOHOMISH COUNTY, a subdivision of the State of Washington,<br><br>　　　　Defendant. | CASE NO. C05-0377-MAT<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

INTRODUCTION

Plaintiff Humane Society Western Region, doing business as Happy Paws Farm (Happy Paws), filed this lawsuit against Snohomish County (the County), alleging provisions of the Snohomish County Code (SCC) and the County's enforcement of such regulations violate its state and federal constitutional rights. ( *See* Dkt. 1.)  The Court finds this matter appropriate for resolution without oral argument.  Plaintiff avers that SCC provisions regulating barking (the "noise ordinances") are unconstitutionally vague in violation of the state and federal constitutions and that the SCC provision governing the temporary housing of animals in shelters (the

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
PAGE -1

01  "temporary housing rule") violates its federal constitutional right to substantive due process.[1]

02  Defendant moved the Court for summary judgment. (Dkt. 26.) Now, having considered the

03  papers and pleadings submitted by the parties, as well as the balance of the record in this matter,

04  the Court concludes that defendant's summary judgment motion should be granted and the claims

05  remaining in this case dismissed with prejudice.

## BACKGROUND

The County licensed Happy Paws as a "commercial kennel-shelter" in 1999, following an application submitted by Linda Hunter, Happy Paws' founder and director. (Dkt. 28, Ex. A.) The SCC defined such a shelter as "a facility that accepts from the public impounded, stray, homeless, abandoned or unwanted animals for temporary housing[,]" with "temporary" construed as a period not to exceed six months. SCC 6.06.005(7).[2]

The SCC required Happy Paws, as an outdoor facility, to "maintain quiet hours between 10:00 pm and 6:00 am Monday through Friday and 10:00 pm and 8:00 am Saturday and Sunday." SCC 6.06.025(1). The SCC defined "quiet hours" as "the hours of day during which a dog or dogs shall not be allowed to bark continuously for a duration that exceeds five minutes nor be allowed to engage in repetitive barking[,]" with "repetitive barking" meaning "barking, whether by one or more dogs, which while not continuous constitutes 10 minutes or more of any half hour

---

[1] Plaintiff recently stipulated to dismissal of a number of other claims raised in its Complaint and agreed to seek only equitable relief. (*See* Dkt. 46.)

[2] At the time of plaintiff's application, SCC 6.06.005(7) did not explicitly define the term temporary. (*See* Dkt. 28, Ex. K.) In 2007, following the unanimous recommendation of the Snohomish County Animal Advisory Board and an opportunity for public comment, the County amended the animal shelter definition to expressly limit the housing of animals therein to a period "not to exceed six months." (*Id.* at ¶¶31-32.)

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
PAGE -2

time span." SCC 6.06.005(15) (as stated in Dkt. 28, Ex. K); SCC 10.01.050(5)(b); and 10.01.020(29).[3]

Beginning in early 2003, the County began to receive complaints from neighbors of Happy Paws regarding repetitive barking coming from the shelter during, but not limited to, quiet hours. (Dkt. 28 at ¶ 24 and Ex. B.) During investigation of the neighbors' complaints, County license inspectors learned that Happy Paws intended to provide long-term or permanent care to some unadoptable dogs. (*Id.* at ¶27.) The Happy Paws website confirmed the existence of a number of these "long-term" and potentially "permanent" residents. (*Id.*, Ex. D.) In addition to advising as to noise and other violations, County licensing employees informed Ms. Hunter that she was not permitted to keep dogs at Happy Paws for more than six months pursuant to SCC 6.06.005(7). (*Id.* at ¶¶ 29-30.) Ultimately, the County gave plaintiff until May 31, 2003 to comply with the applicable SCC provisions. (*Id.*, Ex. E at 2 and Ex. F at 3.)

The County continued to receive complaints from Happy Paws' neighbors as to noise violations. (*Id.*, Ex. C and Ex. F at 2-4.) Some neighbors submitted logs documenting repetitive barking and videotape capturing audio of dogs barking. (*Id.*) The County advised Ms. Hunter as to these complaints and as to alternative solutions to keeping dogs beyond a temporary period, including the creation of a non-boarding commercial kennel separate and distinct from the shelter, establishing a personal kennel at Ms. Hunter's residence, and relocating outside of Snohomish County. (Dkt. 35, Ex. H and Dkt. 28, Ex. E at 2-3 and Ex. F at 2-4.) Internal County documents

---

[3] While it does not appear that the current version of SCC 6.06.005 contains these or any other definitions for quiet hours and repetitive barking, the above version was in effect during the relevant time period (*see* Dkt. 28 at ¶ 18 and Ex. K), and SCC 10.01.050(5)(b) and 10.01.020(29) continue to define quiet hours and repetitive barking as described above.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
PAGE -3

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
PAGE -3

01 reflect that Ms. Hunter found none of the suggested alternatives acceptable. (*Id.*)

02 On July 11, 2003, the County issued a notice of code violation, cease and desist order, immediate correction order, and civil penalty order ("Notice and Order") to Happy Paws based on its violation of the noise ordinances and the temporary housing rule, as well as other violations, including allowing dogs off the premises without a leash and failure to provide a washroom facility. (Dkt. 28 at ¶40 and Ex. F.)  The Notice and Order set forth potential civil and criminal penalties. (*Id.*)

Plaintiff appealed the Notice and Order. (*Id.*, Ex. G.)  However, in October 2003, plaintiff stipulated to violating the noise ordinances. (*Id.*, Ex. H.)  Pursuant to the stipulation, plaintiff agreed to a one-day penalty fine of $50.00 and a thirty-day suspension of enforcement activity pending resolution of various compliance issues. (*Id.*)

Plaintiff's commercial kennel-shelter license lapsed in October 2003. (*Id.* at ¶46.)  It has not submitted a new application, nor has it applied for any license other than a shelter license at any time before or after October 2003. (*Id.* at ¶ 47.)

## DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322-23. "[A] party opposing a properly supported motion for summary

01  judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific
02  facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
03  242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

04  As noted above, plaintiff here pursues both state and federal constitutional claims. Its
05  federal claims are brought pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff
06  must allege the violation of a right secured by the constitution and laws of the United States, and
07  must show that the alleged deprivation was committed by a person acting under color of state law.
08  *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir.
09  1991). A local government unit or municipality can be sued as a "person" under § 1983 *Monell*
10  *v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978). However, a municipality cannot be held
11  liable under § 1983 solely because it employs a tortfeasor. *Id.* at 691. A plaintiff seeking to
12  impose liability on a municipality under § 1983 must identify municipal "policy" or "custom" that
13  caused his or her injury. *Bd. of the County Comm's v. Brown*, 520 U.S. 397, 403 (1997). Here,
14  for the reasons discussed below, the Court agrees with defendant that plaintiff's state and federal
15  constitutional claims should be dismissed.

16  A.   <u>Substantive Due Process</u>

17  The Due Process Clause of the Fourteenth Amendment provides that no state shall
18  "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend.
19  XIV, § 1. "The substantive component of the Due Process Clause 'forbids the government from
20  depriving a person of life, liberty, or property in such a way that "shocks the conscience" or
21  "interferes with rights implicit in the concept of ordered liberty."'" *Squaw Valley Dev. Co. v.*
22  *Goldberg*, 375 F.3d 936, 948 (9th Cir. 2004) (quoting *Nunez v. City of Los Angeles*, 147 F.3d

01  867, 871 (9th Cir. 1998) (quoted sources omitted)). "To establish a violation of substantive due

02  process . . . , a plaintiff is ordinarily required to prove that a challenged government action was

03  'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety,

04  morals, or general welfare'." *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996) (quoting *Euclid*

05  *v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926) and citing *Bateson v. Geisse*, 857 F.2d 1300,

06  1303 (9th Cir. 1988)).

07        Plaintiff argues that defendant violated its federal constitutional right to substantive due

08  process through the deprivation of its property rights. Specifically, plaintiff argues that the

09  County's enforcement of the temporary housing rule destroys its property rights in the dogs it

10  cares for and its ability to use the land it leases to provide long-term care for animals in need.

11        Defendant argues generally that plaintiff fails to submit evidence sufficient to demonstrate

12  that it had a policy or practice depriving citizens of their constitutional rights. *See Bd. of the*

13  *County Comm's*, 520 U.S. at 403. It also specifically argues that plaintiff's federal substantive due

14  process claim is preempted by the Fifth Amendment's Takings Clause. *See, e.g., Squaw Valley*

15  *Dev. Co.*, 375 F.3d at 949 ("[S]ubstantive due process claims based on governmental interference

16  with property rights are foreclosed by the Fifth Amendment's Takings Clause.") (citing *Madison*

17  *v. Graham*, 316 F.3d 867, 871 (9th Cir. 2002)); *Armendariz v. Penman*, 75 F.3d 1311, 1324-26

18  (9th Cir. 1996) (stating same and that: "Substantive due process analysis has no place in contexts

19  already addressed by explicit textual provisions of constitutional protection, regardless of whether

20  the plaintiff's potential claims under those amendments have merit.")

21        In response to defendant's summary judgment motion, plaintiff voluntarily dismissed its

22  claim based on an unconstitutional taking, but continues to argue that the County violated its

federal constitutional right to substantive due process. Defendant replies that the voluntary dismissal of plaintiff's takings claim does not revive its substantive due process claim. *Cf. Squaw Valley Dev. Co.*, 375 F.3d at 949 (prohibition on substantive due process claims based on governmental interference with property rights "extends even to claims that would be unsuccessful takings claims.") (citing *Armendariz*, 75 F.3d at 1325-26).

Plaintiff's substantive due process claim posits an unconstitutional taking of its property. (*See, e.g.*, Dkt. 30, Ex. A at 12 (plaintiff answered an interrogatory about its substantive due process allegation in part: "As written and as applied, the County's actions are unconstitutional and is a taking of plaintiff's property").) Therefore, as argued by defendant, this claim is foreclosed by the Fifth Amendment's Takings Clause, regardless of whether or not plaintiff pursues a takings claim. *See Squaw Valley Dev. Co.*, 375 F.3d at 949-50 ("The blanket prohibition applies even to a disguised takings claim. As we have explained, landowners 'cannot sidestep *Armendariz* by re-characterizing their claim as lying solely in substantive due process.'") (quoting *Macri v. King County*, 126 F.3d 1125, 1129 (9th Cir. 1997) and citing *Buckles v. King County*, 191 F.3d 1127, 1137 (9th Cir. 1999) (precluding a substantive due process claim based on "spot zoning" and explaining that "changing the label will not change the result").) Moreover, for the reasons described below, "[e]ven assuming that some room remains for substantive due process claims in the context of deprivations of property," *id*. at 950, plaintiff's federal substantive due process claim would fail on the merits.

Defendant asserts that the temporary housing rule is reasonably and legitimately aimed at protecting the safety and well-being of pets and their prospective owners. It notes that, in defining what would constitute an animal shelter, it was guided in part by the recommendations of the

Snohomish County Animal Advisory Board (SCAAB), which advised that animals housed in shelters long-term may deteriorate physically and cognitively over time and that institutional confinement could lead to animal collecting and hoarding and create serious conditions of cruelty and neglect. (*See* Dkt. 28 at ¶¶ 6, 31.)[4] Defendant maintains that the temporary housing rule uses reasonable means by which to achieve its intended purposes, asserting that the time limitation encourages shelters to actively pursue the adoption of all animals in their facilities and discourages taking in unadoptable animals with the intent of keeping them indefinitely. (*See id.* at ¶¶ 8-9.) Finally, defendant argues that the temporary housing rule is not unduly oppressive, asserting that plaintiff eschewed lawful options that would permit long-term housing to some animals, including foster care and commercial kennel ownership of up to twenty-five dogs, *see* SCC 6.06.050; 6.06.005(10); and 6.06.016, and that plaintiff fails to identify or prove any economic loss to its leased property.[5]

---

[4] Plaintiff seeks to strike all portions of the Declaration of Vicki Lubrin setting forth expert opinions, particularly paragraph six, which speaks to, *inter alia*, the long-term physical and cognitive deterioration of dogs in shelters. (*See* Dkt. 28 at ¶ 6.) Plaintiff asserts that Ms. Lubrin, the Licensing Manager in the Snohomish County Auditor's Office, lacks the education, training, or experience to express such opinions. However, defendant notes that Ms. Lubrin has directly overseen the licensure of kennels and shelters in Snohomish County since 1990 and avers that the content of paragraph six is wholly consistent with her training, experience, and expertise. The Court agrees with defendant and adds that, significantly, Ms. Lubrin backs up the assertions made in paragraph six of her declaration as guided, in part, by recommendations of the SCAAB. (*See id.*)

[5] The parties phrased their substantive due process arguments in terms of the analysis of a state constitutional violation. *See Presbytery of Seattle v. King County*, 114 Wn.2d 320, 330, 787 P.2d 907 (1990) (under Washington law, to determine whether a regulation violates due process, the court asks: (1) whether it is aimed at achieving a legitimate public purpose; (2) whether it uses means that are reasonably necessary to achieve that purpose; and (3) whether it is unduly oppressive on the land owner). Although plaintiff has since dropped its state claim, the arguments remain relevant to the remaining federal claim.

In response, plaintiff argues that the temporary housing rule encourages moving difficult-to-adopt dogs back and forth from shelters to foster homes, ignores the needs of the dogs, and fails to do anything to further public safety. Plaintiff suggests the existence of less restrictive means to address the purported problem of dog hoarding, such as limiting the number of dogs based on the size of any given facility, and avers that the temporary housing rule actually threatens public safety because it exposes potential adopters to dogs who have not been sufficiently rehabilitated to integrate into adoptive homes. Plaintiff further argues that the rule is unduly oppressive in denying it the right to pursue its mission of providing care for and finding new homes for all dogs in need, and in exposing it to the risk that dogs transferred to another facility may be euthanized, an outcome which would be morally repugnant to plaintiff's board and volunteers.[6]

Promoting the welfare of animals and public safety are unquestionably legitimate

---

[6] Although plaintiff does not point to any declarations in support of its arguments as to the temporary housing rule ( *see* Dkt. 34 at 19-21), it elsewhere references declarations from veterinarians in support of the proposition that "[a] dog should not be adopted out until it is ready, regardless of a time factor." (*Id*. at 4 (citing Dkt. 35, Exs. A-E).) Defendant seeks to strike these declarations (*see* Dkt. 42) given that plaintiff failed to identify these veterinarians in its initial disclosures or at anytime thereafter. *See* Fed. R. Civ. P. 37 (c)(1) ("A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) [which govern initial disclosures and required supplements thereof] . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion for any witness or information not so disclosed."); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 n.1 (9th Cir. 2006) ("It is not an abuse of discretion to exclude a party's expert testimony when that party failed to disclose the expert report by the scheduling deadline and that party reasonably could have anticipated the necessity of the witness at the time of the deadline.") Defendant also seeks to strike declarations of fact witnesses (Dkt. 35, Exs. M-P), exhibits (*id*., Exs. O, Q-R), and the cited declaration of Linda Hunter, the latter of which was never submitted to the Court. While defendant improperly put its request to strike in a separate motion, *see* Local Civil Rule 7 (g) (requests to strike must be included in the responsive brief, not a separate motion), it does raise legitimate concerns. However, in finding defendant entitled to summary judgment, the Court declines to specifically address all of the arguments raised in defendant's motion to strike.

governmental interests.  *See, e.g., Meredith v. Oregon*, 321 F.3d 807, 818 (9th Cir. 2003) (upholding the conclusion that promoting public safety is a legitimate state interest); *American Dog Owners Ass'n v. Yakima*, 113 Wn.2d 213, 217, 777 P.2d 1046 (1989) ("Dogs are subject to police power and may be destroyed or regulated to protect citizens.") (citing *Sentell v. New Orleans & C.R.Co.*, 166 U.S. 698, 704 (1897)).  The temporary housing rule reasonably attempts to achieve those purposes by requiring that dogs not be kept in a shelter environment on a more than temporary basis in order to avoid potentially deleterious effects.  The fact that other means could be utilized and/or that the County's views regarding animal housing and welfare differ from those of plaintiff does not suffice to establish that defendant's actions were "'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare'." *Patel*, 103 F.3d at 874 (quoted source omitted). Moreover, as defendant points out, there are code-compliant methods of accommodating dogs who may be in need of long-term care without resorting to euthanasia or improper adoption, such as obtaining a license for foster care, which would allow the foster care provider to keep the adult dogs for an additional six months, and/or obtaining a commercial kennel-non-boarding license, which would allow ownership of up to twenty-five dogs permanently.  *See* SCC 6.06.050; 6.06.005(10); and 6.06.016.  The existence of these options refutes plaintiff's contention that the temporary housing rule is, in actuality, unduly oppressive.[7]

---

[7] Plaintiff asserts in its opposition that such options were not offered to it "until very recently." (Dkt. 34 at 6.)  However, the declaration cited in support was never submitted to the Court and the assertion is contradicted by a County memorandum submitted by plaintiff and the Notice and Order, both of which reflect that the option of creating a non-boarding commercial kennel was, in fact, presented to and rejected by Ms. Hunter in May 2003. (Dkt. 35, Ex. H and Dkt. 28, Ex. F at 3.)  While these documents refer to the option of creating a "personal" non-

01  In sum, plaintiff's federal substantive due process claim is foreclosed by the Fifth

02 Amendment's Takings Clause and, even if considered through the Fourteenth Amendment, the

03 Court finds no basis for concluding that the temporary housing rule violates plaintiff's federal

04 constitutional rights. As such, defendant is entitled to summary dismissal of this claim.

05 B.  Vagueness

06  A statute may be shown to violate federal or state constitutional rights to due process

07 where "it is so vague and standardless that it leaves the public uncertain as to the conduct it

08 prohibits[.]" *Giaccio v. Pennsylvania*, 382 U.S. 399, 402 (1966); *accord City of Seattle v. Eze*,

09 111 Wn.2d 22, 26, 759 P.3d 366 (1988) ("An ordinance or statute is 'void for vagueness if it is

10 framed in terms so vague that persons of common intelligence must necessarily guess at its

11 meaning and differ as to its application.'") A statute may be deemed impermissibly vague either

12 because "it fails to provide people of ordinary intelligence a reasonable opportunity to understand

13 what conduct it prohibits[,]" or where "it authorizes or even encourages arbitrary and

14 discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *accord Eze*, 111

15 Wn.2d at 26 ("The vagueness doctrine serves two important purposes: to provide fair notice to

16 citizens as to what conduct is proscribed and to protect against arbitrary enforcement of the

17 laws.")

18  Under Washington law, a statute is presumed constitutional and the challenging party bears

19 the burden of proving vagueness beyond a reasonable doubt. *Haley v. Medical Disciplinary Bd.*,

20 117 Wn.2d 720, 739, 818 P.2d 1062 (1991). Also, under either federal or state law, courts

21 ―――――――――――――――

22 boarding commercial kennel (*id.*), this option is reasonably understood to refer to a non-boarding commercial kennel as described in SCC 6.06.005(10).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
PAGE -11

recognize that "[s]ome measure of vagueness is inherent in the use of language[,]" given that, "'[c]ondemned to the use of words, we can never expect mathematical certainty from our language.'" *Id.* at 740 (quoting *Grayned v. Rockford*, 408 U.S. 104, 110 (1972)).

In this case, plaintiff challenges the noise ordinances as unconstitutionally vague. As reflected above, these ordinances prohibit barking "continuously for a duration that exceeds five minutes" and "repetitive barking[,]" meaning "barking, whether by one or more dogs, which while not continuous constitutes 10 minutes or more of any half hour time span." SCC 6.06.005(15) (as stated in Dkt. 28, Ex. K); SCC 10.01.050(5)(b); and 10.01.020(29). *See also* 10.01.040(1)(a) (prohibited "public disturbance noises" include "[k]eeping or harboring any animal whose frequent or repetitive noisemaking unreasonably interferes with the peace and comfort of persons in rural or residential districts") and SCC 10.01.020(25) (defining "public disturbance noises" as "any sound which, because of its random or infrequent occurrence, is not conducive to measurement under the quantitative standards established in SCC 10.01.030; and endangers or injures the safety or health of humans or animals, or endangers or damages personal or real property, or annoys, disturbs or perturbs any reasonable person of normal sensitivities, or is specifically included in those listed in SCC 10.01.040 (1) or 10.01.040 (2).")

Plaintiff argues that the noise ordinances invite subjective evaluation resulting in arbitrary enforcement. It points to the absence of any reference to identifiable levels of noise, noting that the ordinances apply only to noises that are repetitive, whether or not louder than the sound of a pin dropping. Plaintiff also points to the testimony of County License Inspector Patrick Vollandt, who interpreted the statute to allow a finding of repetitive barking even with seven-minute lapses between barks, and the testimony of License Inspector John Korsborn, who appeared to entirely

01  disregard the specific statutory language at issue. (*See* Dkt. 35 Ex. I at 41 (Vollandt agreed that

02  an instance of "barking in minute one and then not another bark until minute nine" would

03  constitute repetitive barking) and Ex. J at 28-29 (Korsborn testified to taking a "common sense

04  approach" in investigating barking complaints and not looking at his watch in so doing).) Plaintiff

05  also asserts that while enforcing the noise ordinances against Happy Paws, the County ignored

06  complaints made about other neighborhood dogs. However, again, plaintiff's arguments fail.

07  The absence of identifiable levels of noise, or decibel levels, does not render the noise

08  ordinances unconstitutionally vague. Instead, as argued by defendant and as acknowledged in the

09  SCC, not all noises are conducive to measurement on such a basis. *See* SCC 10.01.020(25)

10  (defining "public disturbance noises" as "any sound which, because of its random or infrequent

11  occurrence, is not conducive to measurement under the quantitative standards established in SCC

12  10.01.030[]"). Reasonably concluding that the noise produced by barking dogs does not easily

13  allow for such measurement, the County developed a method by which to determine whether a

14  violation had occurred; that is, where there is continuous barking for more than five minutes or

15  non-continuous barking constituting ten or more minutes in a thirty-minute period. Plaintiff fails

16  to demonstrate that this method is not easily understood by individuals of ordinary intelligence or

17  that it fails to protect against arbitrary enforcement. Moreover, given that the ordinances in

18  question explicitly target dog barking, plaintiff's comparison to the noise of a pin dropping is not

19  well taken.

20  Nor does the testimony of the license inspectors support plaintiff's position. In fact,

21  License Inspector Vollandt's testimony was entirely in keeping with the clear language of the

22  statute: "As far as repetitive barking, what I do is I go out for a period of half an hour, listen, make

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
PAGE -13

a note at the time when I hear barking for the duration. . . . Five dogs barking at once doesn't go five times. That's once. Once dog barking for five seconds, that's once. . . . I try to total up the amount. Like I say, I keep a scratch pad[.]" (Dkt. 35, Ex. I at 38-40.)  Also, while License Inspector Korsborn admitted he did not pay attention to the specific language of the statute, his testimony supports the conclusion that an understanding of the noise ordinances is a matter of "common sense" and that the County did not arbitrarily pursue only complaints made against Happy Paws. (*Id.*, Ex. J at 28-29 ("I've just used common sense. If in fact it was irritating to me, I figured it was irritating the neighbors, and I would tell people, Hey, get your act squared away. And that was basically how I handled things. I didn't necessarily go by the code exactly.") and at 27 (referring to and describing practices during investigations at "several different kennels").) Further, as asserted by defendant, this individual's apparent "prosecutorial discretion" does not in itself establish that the noise ordinances authorize or encourage arbitrary and discriminatory enforcement. *See*, *e.g.*, *United States v. Ninety-Five Firearms*, 28 F.3d 940, 941-42 (9th Cir. 1994) (in considering a federal agent's decision to allow certain conduct based on a desire to be fair, even though he knew it was not in accordance with the law, the court stated: "That such prosecutorial discretion may be exercised by law enforcement officers is not evidence that [the statutes in question] 'encourage arbitrary and discriminatory enforcement.'") (quoted source omitted).

    Finally, the evidence particular to this case does not support the contention of arbitrary enforcement. The County had before it multiple complaints from a number of different neighbors of Happy Paws, with substantiation of those complaints in the form of detailed written logs and audio of dogs barking. (*See* Dkt. 28, Exs. B & C.) Moreover, the County only enforced the noise

ordinances after months of informal attempts at resolving the issue failed.  (*See id*., Ex. F at 1-4.) Given these facts, plaintiff fails to justify the comparison to the County's alleged failure to investigate various instances of other neighborhood dogs barking.[8]

Therefore, given the above, plaintiff fails to demonstrate that the noise ordinances are unconstitutionally vague.  Accordingly, defendant is also entitled to summary dismissal of this claim.

## CONCLUSION

For the reasons described above, defendant's motion for summary judgment is GRANTED.  Plaintiff's claims and this case are hereby DISMISSED with prejudice.

DATED this 17th day of August, 2007.

Mary Alice Theiler
United States Magistrate Judge

---

[8] Indeed, plaintiff cites only two instances of Ms. Hunter's complaints to the County as to barking – neither specific to any particular dog or neighbor and both occurring in the context of responding to the neighbors' complaints about plaintiff and the County's investigation. (*See* Dkt. 35, Exs. F & G.)